(No. 95-CC-0425-■■■■)

KELLER CONSTRUCTION, INC., Claimant, v
THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 6, 1998.*

BURROUGHS, HEPLER, BROOM, MACDONALD & HE-BRANK (WILLIAM J. KNAPP, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (GUY A. STUDACH, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

In this breach of contract claim against the Department of Transportation ("IDOT"), the Claimant contractor seeks $37,905 in additional compensation for installation of sheet piling that was required for "railroad protection" for

the Clark Bridge construction project in Alton, Illinois. This "railroad protection" claim, which arises largely on the standard provisions of IDOT construction contracts, is before us for final decision following trial to our Commissioner, Patrick Hanley. This appears to be the first "railroad protection" construction contract claim to be decided by this Court.

## Nature of the Claim

The dispute in this case is over labor and material charges for sheet-piling installation that was required for the protection of railroad traffic and structures adjacent (and under) the bridge construction project that was the subject of Claimant's contract with IDOT. This temporary sheet piling for "railroad protection" was not set forth in the contract bid specifications, and was not computed as a cost element of the Claimant's winning contract bid to IDOT. The piling was required as excavation protection by the railroad's engineer—after the Claimant's work had commenced—under the railroad protection provisions of IDOT's standard specifications, which are incorporated into virtually all IDOT road and bridge construction contracts:

"§105.02 Authority of Railroad Engineer. Whenever the safety of railroad traffic during construction is concerned, the Railroad Engineer will have jurisdiction over safety measures to be taken and his/her decision as to methods, procedure and measures used shall be final, and any and all Contractors performing work near or about the railroad shall be governed by such decision. Instructions to the Contractor by the Railroad Engineer shall be given through the Engineer. Unless otherwise specified, all costs incurred in conforming to the requirements, specified herein, shall be considered as incidental to the contract and no additional compensation will be allowed."

The Claimant contends that this sheet pile installation, which was not called out in the contract specs, was a contract "extra" that requires additional compensation under the "Extra Work" provision of IDOT's Standard Provisions:

"§101.15 Extra Work. An item of work not provided for in the contract as awarded but found essential to the satisfactory completion of the contract within its intended scope as determined by the Engineer."

Claimant also contends, alternatively, that IDOT, by its custom and practice of specifying the "railroad protection" work in its bid documents and of paying for such work (either as part of the bid price or as extra compensation) in cases where it failed to specify the particulars, has waived its rights under section 105.02. Claimant also asserts, alternatively, that IDOT's custom and practice of prior payment to this contractor, as well as its prior practice of specifying the railroad protection work, effects an estoppel against IDOT's invocation of section 105.02.

## The Facts

Claimant was awarded the Clark Bridge approach construction contract (IDOT Contract No. 96294) pursuant to its low bid on June 10, 1991. At the time of the bidding, adjacent railroad tracks were scheduled to be relocated at the bridge site, and the railroad relocation plans were included in the bid drawings, although the timing of the railroad relocation project was unspecified. As planned and as ultimately constructed, the new Clark Bridge spanned over the relocated railroad tracks and the approach that was constructed by the Claimant.

Although the IDOT bid plans and specifications did show the specific plans for the railroad track relocation, IDOT's bid plans and specifications did not specifically call for the use of sheet piling (or any other method) to protect railroad property during the bridge/approach construction. When the Claimant's work commenced, the railroad construction had not yet progressed to where bridge construction would interfere with the railroad. The Claimant did not include sheet piling for railroad protection in its bid.

After construction began, it became necessary for the Claimant to provide protection to the railroad relocation. After long negotiation with the engineer of the Norfolk & Southern Railroad, Claimant was directed to install temporary sheet piling to protect the railroad tracks (pursuant to the authority provided by section 105.02 and section 107.12 of the IDOT standard provisions). Claimant installed a sheet pile wall 95 feet long and 21 feet deep. After the contract was performed, the Claimant submitted its final billing, including $37,905 as an extra work item for the sheet piling (computed at $19/square foot, the contract pay item rate for such work) that was not included in the bid but was used on the project as mandated by the railroad. The Department refused to pay, based on its finding that the sheet piling was not an extra item but was an incidental item to be included in the bid price under section 105.02. This claim ensued.

### The Trial; Evidentiary Rulings

A hearing was held on November 26, 1995 and March 19, 1996 before Commissioner Hanley, who filed his report to the full Court.

Testimony was presented by Richard Call, IDOT studies and plan senior squad leader; Bobby D. Martin, IDOT railroad technician; Larry Lipe, IDOT estimating technician; Alan Goodfield, IDOT engineering geologist in its bureau of bridges and structures; Jerry Wibbenmeyer, IDOT supervising field engineer; Dale Klohr, IDOT District 8 Engineer for District 8; Jerry Hamarn, Claimant's EEO officer, safety officer and corporate secretary; William Ulivi, IDOT supervisor in its department of planning.

Much of the testimony concerned contract interpretation and administration matters, but the IDOT witnesses did acknowledge that they had intended to include

specific railroad protection material—warnings that it would be necessary in the Clark Bridge project at a minimum, if not actual work specs—and that their omission of such references was an unintentional mistake. The testimony also showed, without dispute, that during the approximate 28 days that the bidders had to formulate their bid submissions, it was virtually impossible to obtain a definitive "railroad protection" plan from this or any railroad involved.

Numerous documents were also admitted into the record, including a memorandum written by Richard Call, a copy of the contract and plans for the Clark Bridge project, plans for other jobs, excerpts from the Stanford Specifications for Road and Bridge Construction, the preconstruction conference report letters from the railroad, and letters to and from the Claimant.

Evidence of other IDOT construction contracts with this Claimant and with other contractors, and of the payment treatment accorded to various railroad protection work under those contracts, as well as testimony about IDOT's practices in this area, was admitted by the Commissioner over IDOT's objections on relevance grounds primarily. Although the evidence adduced by these documents and testimony fell short of what Claimant proffered as its justification—*i.e.*, a consistent pattern of established custom and practice by IDOT—and although this Court does not agree with the threshold basis for admission of this parol evidence as bearing on the construction and application of section 105.02 and section 101.15 of the contract Standard Specifications—*i.e.*, that those provisions are ambiguous in the classic sense—we will allow the evidence and affirm the Commissioner's ruling as within his and our discretion.

First, there is just enough lack of clarity as to the relationship and interaction between the two competing

Standard Specification provisions (section 105.02 and section 101.15) to justify parol evidence of actual practice by IDOT, which wrote and administers these provisions; second, the proffered custom and practice evidence is germane to the Claimant's waiver and estoppel theories which were in the case; and finally, the evidence as proffered if not as delivered was potentially helpful to this Court in construing recurring Standard Specification of IDOT contracts. The evidence was properly admitted.

## Analysis

On this record, neither party has covered itself with righteousness or reasonableness.

For its part, the Claimant plainly disregarded the prospective or possible need to supply railroad protection. Although the specifics were unstated, and although there was a chance that the sequencing of the railroad and bridge projects might moot the need for railroad protection, the Claimant was affirmatively put on notice of the proximity of the railroad and its imminent relocation to the bridge construction site by IDOT's bid documents. Thus the Claimant plainly determined—and presumably made a business decision—to take its chances on the railroad protection aspect of the project and not to include a contingency amount for this item in its bid.

We nevertheless accept Claimant's point that in the absence of specifications of any railroad protection in IDOT's bid documentation, and given the short time available before the bid deadline, Claimant could not timely obtain a definitive or authoritative answer—from the railroad engineer—as to the cost of railroad protection. Similarly, it is possible, although the record is less clear on this point, that the bidder could not ascertain from the railroad the likely schedule of the railroad relocation project (so as

to determine the probability of actually needing railroad protection) during the critical 28-day, pre-bid period.

On this analysis, the Court concurs with the Claimant that, to the extent of the railroad protection element of this project, IDOT sought and obtained blind bids: the bidder(s) could only guess and take some degree of chance on this aspect of the job. However, that applied equally to all bidders and does not uniquely prejudice the Claimant.

Claimant maintains, however, that such was not the contractual intent and should not be the result imposed by this Court's interpretation of the contract provisions. Claimant further maintains that it relied on its understanding of IDOT practice, *i.e.*, to reimburse contractors for unspecified railroad protection as a contract "extra."

For its part, and although the evidence was not systemic, IDOT has been shown to have a strikingly inconsistent bidding practice in regard to railroad protection. The evidence in this record shows IDOT to be inconsistent in sometimes including detailed railroad protection specs, and sometimes—as in this case—not. Similarly, the pattern is imperfect as to paying for such work, although the handful of contracts introduced into this record makes us wary to draw definitive conclusions. But once this record was opened, below, to parol evidence of IDOT practices, neither side established a consistent IDOT practice with regard to paying for unspecified railroad protection or with regard to treating this element as a part of the original bid or as a separate "extra." It is also provocative that IDOT witnesses could neither explain, nor justify as policy, the inconsistent contract administration practices as to railroad protection.

In the absence of a consistent pattern of practice that might rise to the level of an actual or constructive

administrative interpretation of these Standard Specification terms, and in the face of an affirmative (if undesired) showing of inconsistent practice, the Court must reject Claimant's waiver and estoppel arguments and revert the analysis to the language of the governing contract provisions, which thus become the stopping point as well as the starting point of the analysis.

In rejecting Claimant's estoppel defense to the section 105.02 clause, we must also observe that the estoppel defense is predicated, in part, on the notion that Claimant reasonably relied on the contract specifications—*i.e.*, on their *omission* of railroad protection specs. In light of the provisions of section 105.02 and the presence of the railroad relocation plans in the bid package, we are unprepared to find that Claimant's reliance on the omission of specific protection plans was reasonable or (equivalently) that Claimant had a right to rely on such omission for this purpose.

Turning first to the terms of section 107.12 and section 105.02, which Respondent contends are the dispositive provisions, we find it impossible to agree with Claimant's contention that the language is ambiguous in any material respect—either on its face or as applied (standing alone) to railroad protection work that is not specified in the contract documents. The language is clear in two key respects at least: (1) that railroad protection *work* is to be specified/approved by the railroad engineer, not IDOT; and (2) that the *cost* of railroad protection is included in the bid price "unless otherwise specified" in the contract. That much, at least, is clear.

Turning next to the terms of section 107.12, we find no ambiguity on the face of this language, nor in its application to unspecified work generally.

Nevertheless we must agree that there is an element of uncertainty—but not necessarily of "ambiguity" in the classic multiple-meaning sense—in the interplay of section 105.02 (covering cost of railroad protection work) and section 107.12 (covering the cost of work "not provided for in the contract" initially but later required). On their face, the two sections both appear to apply to the unspecified railroad protection work that is the crux of this claim.

On closer analysis of the section 107.12 language, it is not so clear that the section 101.15 "Extra Pay" provision applies to railroad protection work in the first instance. Claimant assumes that the unspecified railroad protection work is covered by the section 107.12 phrase "work not provided for in the contract as awarded." That turns on the meaning of "provided for," which the Claimant implicitly—but not explicitly—equates to detailed specification in the contract documents. That is a plausible but nonexclusive reading of the phrase.

The phrase "provided for" is not identical to "specified" or "detailed" and has somewhat broader scope. As used in section 107.12, the arcane phrase "provided for" is akin to "required," and does not obviously or readily connote any particular level of detail. In that sense of "required," the phrase "provided for" appears to cover work that is *then* mandated (at the time of initial contracting) but is to be specified later in accordance with some mechanism or process contained (or "provided") in the contract. That, of course, is precisely what is "provided for" by this contract in the case of "railroad protection" work, which is required by the contract at the time of bidding, but is delegated to the railroad engineer for later specification and approval. The narrow contract construction issue is whether "provided for" covers only specified work

or also covers work requirements that are expressly imposed but in a different manner. Although it should not be necessary to engage in such pedantic exercises to ascertain the meaning of a standard provision in a State construction contract, we are constrained to find that "railroad protection" work is "provided for" in this contract within the plain, non-technical, meaning of the words involved.

This conclusion is buttressed by the Claimant's acknowledgement at oral argument that the railroad protection work was required by the contract. We do not find any material difference in this context between "requiring" the work, "mandating" the work and "providing for" the work, just to take the most obvious equivalent phraseology.

But even if we were to assume (*arguendo*) that section 107.12 covered the "railroad protection" work because it was delegated rather than detailed in the original contract documents, and thus were confronted with the contract interpretation issue whereby *both* section 107.12 *and* section 105.02 applied on their face to the disputed "railroad protection" work, the outcome would be the same.

If both section 107.12 and section 105.02 applied, but called for different results—section 107.12 requires extra compensation for "extra work" and section 105.02 designates the cost of this work as "incidental to the contract" and bars extra compensation—then there is a simple, straightforward and ancient rule of construction that settles this issue: the specific provision prevails, every time, over the general provision. We do not bother with citations of authority for such a fundamental and settled principle. This principle is as applicable as between competing "standard" contract provisions—as in this case—as it is between "standard" and individualized contract provisions. Here, section 105.02 is specifically applicable to

unspecified *railroad protection work*, whereas section 107.12 is applicable generally to *all* unspecified work that later becomes required. In this contest, section 105.02 wins as the governing provision, and section 107.12 must defer.

Before concluding the analysis, however, there is one dangling argument—that focuses on one dangling contract phrase—that must be addressed. Claimant focuses on the exception to the "no additional compensation" provision in section 105.02, which reads: "Unless otherwise specified * * *." (The full sentence is set forth above, in the "Nature of the Claim" section of this opinion.) Claimant argues, with considerable vehemence and some persuasion, that the reference to "otherwise specified" must or can refer to the "Extra Work" pay provisions of section 107.12 and its related pay provisions. Although this is a plausible reading, particularly in light of the convoluted language and inartful syntax and structure of IDOT draftsmanship, we are constrained to reject it for two reasons.

First, the plain meaning of the term "specified" requires something more than merely "providing for"—the flip side of our analysis above. Hence the "otherwise specified" exception of section 105.02 is not triggered by the generic "extra work" provisions of section 107.12. It would require another provision specifying compensation for the *railroad protection* work in order to supersede the "no extra compensation" proviso of section 105.02. Second, the Claimant's interpretation of these two "standard specifications" would read into them a circularity that would render the "no extra compensation" provision of section 105.02 nugatory—which is a contract construction no-no. The Claimant's reading of these sections would subordinate section 105.02 to the "extra work" provisions of section 107.12 in *every* contract, and thus section 105.02

would never apply. That is clearly neither the intent nor the sense of these standard contract provisions.

For the foregoing reasons, therefore, we must and do hold that under the terms of this contract, the costs of the later-designated railroad protection work ordered pursuant to section 107.12 and/or section 105.02 is incidental to the contract and is not subject to the extra work provisions of section 107.12 and related provisions. Based on this conclusion, we must reject Claimant's claim for additional compensation under this contract.

## Conclusion and Order

We observe that there are some hints of unfairness in the result that we find to be mandated by the contract analysis. There are overtones of guilt and acknowledgments of error in some of the IDOT staff testimony in this case, which may well be attributable to the avoidability of the result here if the contract specifications on the Clark Bridge project had been done as intended. But we are not a Court of equity and can only apply the law and the contract language as we find it. The Respondent is entitled to the contract bargain it made, and the Claimant is bound by the contract it signed.

The disturbing aspect of this case is the inconsistency with which IDOT seemingly treats this technical aspect of construction contracts, and the resulting disparity in treatment of contractors that can and, according to the evidence in this case, sometimes does occur. If contracts continue to be bid in the blind on "railroad protection," then that practice under the current Standard Specifications—coupled with our decision today—will prompt contractors to build in some contingency for "railroad protection" in every contract on every project near railroad tracks. In Illinois that covers a lot of projects. Whether such a practice

350

is good or bad for Illinois and its taxpayers is not a question for this Court. But it is a question that might be addressed by IDOT sometime.

For the reasons set forth above, it is hereby ordered: This claim is denied on its merits and forever barred. Judgment is entered for Respondent and against the Claimant.